and others. Arguments not to exceed 15 minutes per side. Ms. LaBelle for the appellants. Good morning, Your Honor. Good morning. Deborah LaBelle on behalf of the plaintiffs. I'd like to reserve three minutes. As the court knows, this is a question of whether youth who filed a complaint for sexual abuse by both custodial staff and adult prisoners while housed in adult prisons in Michigan exhausted their administrative procedures prior to filing their complaint in this manner. The point of the PLRA exhaustion requirement is fairly simple. It's to provide notice to the agency and give them a fair opportunity to address the grievance on the merits and provide notice to correct the errors before they end up in court. They get a notice, they get an opportunity to resolve it before they get taken into court. I think what I'd like to address in my oral argument here is the fact that the question of whether, and I'm going to take John Does 8 and 10 first, because they're a little different than John Does 9, whether they exhausted the available administrative remedies prior to filing this case, I think is a much simpler question than the parties got off into in their pleadings in this matter. I think that it's a bit convoluted, and I think that it's a much simpler question and answer for John Does 8 and 10, because both submitted their Step 1 grievance. Both detailed their sexual abuse and rapes in the grievance, and they both received notices that their grievances had been received and that they would not be processed under the general grievance system. Instead, they would be processed under the two-step PREA system. And they were both told, they weren't rejected, in fact, they were both told that PREA grievances by policy could be filed at any time. That's the MDOC policy. Then they were told that all their grievances had been received, they would be sent for investigation because the matters had never been investigated before. They both were told that. But they were then told that the PREA grievance that they filed is considered responded to and closed. So that seems like a totally contradictory statement within that notice. Right. It's very confusing. First, we're going to investigate. Second, your grievance is closed. And, you know, you have two youth who then say, what do we do now? No one told them, hey, go to the second step if you don't agree or anything. So they said, well, we know PREA, which we're now in, has a two-step process. So we're going to ask for PREA two-step grievance forms. Next one. They were not provided them. Their acapedavits and declaration are uncontested that they asked for these forms. Frankly, Your Honor, I've been doing this work for a long time. I've never seen a step two grievance form. So is there a step two grievance form in the materials that we have in the record in this case? No, not that I've seen. But what they did do is that they wrote out in their own hands, this is my step two PREA grievance, and they sent it off. Now, we know that they got John Doe 10s because he got a postnote saying, okay, you can't do this here. You've been transferred. You've got to send your step two to another facility. He sent it to the other facility. John Doe 8 sent his in and wrote. There's no dispute. We put this information in our complaint, even though we don't have the affirmative obligation, and there are declarations that are uncontested. They never received a response. What they did receive some months later is a notice that their claims had been investigated and that there was insufficient evidence to support their claims. So they cooperated. They did everything they could, and they went through the two steps. It was denied. It wasn't rejected. The department had the notice and fair opportunity to resolve these. So your position, then, is that the step two was concluded, the step two document that they created, the 8 and 10 created, was concluded before this final action of the prison officials? It was, Your Honor, because they were concerned about the time limit. So John Doe 8 sent his step two in about within two weeks after he received the response to step one. He sent it on June 27th. He said, I'm writing this because I got this notice that my grievance is considered closed. It's very confusing. It hasn't resolved anything, and I don't know what to do, but here it is. And, you know, it's really odd because you have a time limit to file the step two, but what are you appealing because you don't have a response to your investigation? And John Doe 10 did the same thing, and he even actually filed a subsequent grievance saying, hey, I haven't been responded to on my step two grievance, and I'm grieving the fact that nobody's responded to me, and that one, they said, was untimely. So, you know, they're doing everything they can, and the department, it's a very confusing process. They file step one. They say, we're not going to process it that way, and now the department comes back, and they say, well, you know, the policy should have been to reject these as untimely. Can I ask you a question? Sure. Can I just make an observation and ask you to address kind of what I would call a big picture case issue about these? Yes. You know, on the one hand, we have the question of what the various plaintiffs did. On the other hand, we have this sort of big picture question of how the department is administering the grievance program, at least with respect to this type of grievance. How do we fit the second big picture issue in with the individual issues, or do we? Do we just consider the individual plaintiffs and be done with it, or is there some way we should look at the bigger picture issue? Thank you, Your Honor. I think that, and I don't know if this court has seen them, but certainly in the district courts, there have been a number of cases in which the courts are saying this is incredibly confusing to anyone, and that how you're administering this, the PREA thing, they have a policy. They say you can file a PREA grievance at any time. They do. And yet, when you file it, odd things happen. Sometimes it goes to the internal affairs. Sometimes you get no response, and the process is incredibly confusing. If you want to look at the big picture, I think the big picture is that, you know, the federal standards and the federal act said, listen, we have to stop rape in prisons, and they were particularly concerned about my clients, children aged 13 to 17 who were in adult prisons, and they said, we have to stop it. And this is what we're going to do. One of the ways to stop it is we have to bring it out of the darkness, and they particularly said that youth have a difficulty in reporting rapes by custodial staff and adult prisoners. So they say, let's bring it out of the darkness. Let's eliminate any time limits for filing the grievance. Well, that's the policy behind the statute. What do we do, if anything? Well, the standards say there can be no time limits for filing a grievance that sets forth PREA, and the Michigan Department of Corrections adopted that. Their own policy says there is no time limits for filing. I think you need to get to the question I'm asking you, which is, what do we do? Well, I think as to John, I mean, I think. Not the individual plaintiffs. I'm asking, is there any larger issue to address here, or should we just address the individual plaintiffs and be done with it? I think the larger issue is to recognize that the Departments of Corrections can no longer impose a time limit on grievances that set forth sexual abuse in prisons. So what the relief that you're asking for at this stage from us is to say that John Doe's 8 and 10 have exhausted their grievance procedure and to remand the case to the district court to proceed on the merits. Exactly. And does PREA apply only to prison rapes before the individual turns 18? No. So looking at when the rape occurred. No, no. I thought these people were raising concerns only with respect to rapes that occurred when they were juveniles or sexual assaults. This is a proposed clash, Your Honor, and the class is, and the court hasn't addressed the clash yet, but the class is youth who entered the prisons between ages 13 and 18 and were sexually abused and assaulted by custodial staff and prisoners. During that period. No, it's not so limited. It creates a vulnerability, a particular vulnerability of that class of youth. Now, the district court said, okay, we're only going to consider rapes up to the age of 18. That is not our case. It hasn't been addressed yet. We've been mired in this for five years, Your Honor. We haven't even had a discovery. This meaning the exhaustion. The exhaustion request. And then you've got John Doe 9, which is the retaliation claim where everyone agrees he didn't exhaust, but you're saying that that should go on. And I'd like to address that briefly, too, Your Honor. With regard to John Doe 9, he did not file, and he set forth a declaration. This is not a Boyd case. This is very specific. He said, I've been retaliated against before. They threatened me with putting a contraband in my cell. They threatened me with physical danger and assault. And, you know, unlike this complaint where we got John Doe anonymity status, particularly because of the difficulties of proceeding with this, you file a grievance and you have to expose yourself. And he said, I'm not going to do that. And I won't expose myself, and particularly at a facility which they don't dispute, because we put forth from staff that this is a facility, the Alger facility, that has a culture of retaliation. So defendants argue they don't dispute his declaration. It's very detailed. But they argue, well, 60 days prior to filing the complaint, he wasn't at the Alger facility, so he could have filed there. The reality is, is that he was taken out for a short period of time before and then put back in Alger. He was taken out this time, and he would have to do the grievance at Alger. And, in fact, that's back where he is right now. So to say you could have filed it at Alger knowing that you were likely going to go back there, and so you had a right to do it, that's just not, and it's not supported by anything. In fact, John Doe 9 is back at the Alger facility right now. This would have deterred an adult of ordinary firmness from filing it. And I think that this court and a number of members of this court have recognized that filing a complaint like this, that subjects people to criminal prosecutions and firings, is a lot different than, you know, I'm not saying you shouldn't argue and file a grievance if you get your legal material taken, but this is very different. And when they threatened him with exposure and they threatened him, this was significant to do that. The second thing they argue with – Your red light is on, I hate to say it. Can I finish this and I'll take two minutes on rebuttal, Your Honor? Thank you. The second thing they argue is that, well, he couldn't have filed anyways because his time was up. But that's not their policy. Their policy is very explicit. You can file a pre-aggrievance at any time. So he could have filed it. It was available to him. That's their own policy for filing it and bringing it out. And he was thwarted from doing it. It's an exception to the exhaustion requirement. And we'd ask that John Doe 9 as well be sent back for trial on the merits. Thank you. Thank you. Good morning. Assistant Attorney General Heather Mungus on behalf of the state defendants. I apologize for my voice. It's curious because what I didn't hear anything counsel discuss is the primary question in this case, which is whether the no time limit PREA standard applies retroactively to plaintiffs' claims that occurred before its effective date to allow them to exhaust these old claims. That's what Judge Cleland dismissed this case on was that the PREA process was not available to them. And so they had simply failed to exhaust. Isn't that peculiar in that even though they were – the prison gave them notice, we're considering this under PREA. I think it was 8 and 10 got that treatment, even though they weren't expecting that, that the timing was a little off. It seemed like the prison went ahead with PREA. I agree that when they filed these grievances, the PREA process, the DOM was in place. So the DOM required sexual abuse complaints to be processed under the PREA grievance process. So that's where they went. The point is that, yes, we did accept the grievances because we had to because that's what the DOM and the CFR says about no time limits. So we did take the grievances and we did investigate them. I don't disagree with any of it. The question is what's the impact or the effect of our doing so. Our argument is that the investigation under these circumstances should not apply retroactively for exhaustion purposes. In other words, it shouldn't – the CFR was not intended to look backwards. This no time limit was not intended to look backwards to allow people to exhaust stale claims. But what's saying that these are stale claims? Is it the statute of limitations that's the problem here? Well, they're stale because they occurred before the effective date of the no time limit. When do you contend is the effective date of the no time limit? Our principal position is that we didn't agree, the state didn't agree to be bound to come into compliance with the no time limit until April 2016, the date of the DOM. Why in the world does the state's decision to comply have anything to do with the analysis? I mean, they may as well have been required to comply for years before they decided to comply. But that's not really true, Your Honor. I mean, the next best date for the effectiveness of these standards is the October 1, 2013 date. Why isn't it the 2012 date when the statute says it's effective? Because it wasn't effective as to the states. There was a one-year grace period where we didn't have to do anything, right? I mean, that's what Congress said. What section are you relying on for that? It's in the act. It's in our brief as well. It's 3307, I think. There were times where these individuals were sent information saying they would be considered under PREA, and it was pre-the state adoption, the agreement to comply. Let me first answer Judge Gibbons, or excuse me, Judge Moore. So the PREA Act, it's 34-30-307-2, so it's E-2, Adoption of National Standards. That talks about when the adoption is. And then if you look at E-7, the effective date, the requirement of the adoption of the national standards is to the states. So the first time that we're going to be held accountable to these new standards is the second fiscal year beginning after the date in which the standards were finalized. So that second fiscal year began October 1st, 2013. So the best date that plaintiffs, the best date that I could concede to would be this October 1st date. But they filed after that date, right? They filed complaints after that date. Their incidents all occurred before. So your real concern is when did the incidents happen? Yes. It's, right, there's a multilevel, right? So we have what's the effective date of the standards is to the states. When did we have to commit to this no time limit for sex abuse claims? Our principal argument is it's when we said we did, we said we would, which is in April 2016 when we agreed to be bound by them by adopting a formal policy. So what if you'd said you never will agree? If we never agreed, then no. Then all these people who are purportedly protected by this federal statute are not protected. Well, how are they protected? There's no enforcement mechanism. This court can't enforce the standards. The only enforcement mechanism here is the DOJ can take away funding. Well, I mean, I'm sorry, but we enforce by applying laws all the time that don't have a built-in enforcement mechanism. I mean, if it has the force of law, our opinion has the force of saying it is law and people therefore have to comply. I mean, you have a very quaint notion of what the state's obligations are. I don't know that it's quaint. I'm going by what Congress said. Congress said the standards apply to the states after October 1, 2013, and it hardly even said that. What there is is a rolling time period for compliance, and the only penalty for noncompliance is DOJ may take away some of our funding. If we could get to the question of what actually the state has done in this case, there are some forms that are called PREA investigative finding and action forms. What are they? Are they step one responses or step two responses? They do have a step. The plaintiffs did each get a step one response, as far as I remember. So how the two-step process is supposed to work, and really this is nothing that the district court did not decide any of these questions. So whether or not they've exhausted the PREA process, we'll have to go back on remand for if you think this is retroactive, because they were dismissed on this retroactive activity question and not because they failed to exhaust the PREA process, which Judge Kleanan did not even address. So we're going to have to go back on remand to figure out whether they actually have it. I was just asking you a simple question, because I thought that we could come to an understanding. Sometimes during the course of oral argument, people recognize that they're on the same path. So is your contention that these forms, and one is R2713 and R2714, called PREA investigative finding and action forms, are they step one responses? The step one response is the ones that look a little bit more like a memo. So they are not step one responses? Step one response is really basically the memo that came back saying, we've taken your complaint, it's been investigated, this is your step one response. But that one said? You're looking at the results form. So the form that you just referred to in trying to answer my question, which is really causing befuddlement here, is something that says we are going to look into this, but is not giving an answer, yes, you have a valid grievance or no. So that's your step one response? That's your step one. So is there a step two response? The only time, for the department, the only reason a prisoner would go to step two on the PREA grievance is that if we did not investigate. The step two has to be filed within 10 days of the time for including a step one. The step one response simply says that we've got your grievance and we are investigating it or we aren't investigating it. Okay, so where is the step two response? Is there a step two response in John Doe 8 and 10? I'm not aware of a step two response because the only time you would ask for a step two response is if you were not being investigated. So then all you get through filing the grievance is a right to be investigated, you don't have a right for it to be determined? You get the determination later. Where is the determination here? Here it's like a binary thing. We're either going to investigate or we're not going to investigate. And what did your people say? We investigated their claims, right? So where's the result of the investigation? That's the form you were just talking about. There is a form in both of their cases, in both John Doe 8 and 10, that says we've looked at your claims and they were unsubstantiated. Okay, and is that then your step one response? What is that? The step one response is the one that came back at the very early outset that says we're investigating your case, we're investigating your claims. I recognize that this is, but you have to, there was a very… So when they said there's nothing to your claim, what do you call that? Step one, step two, or something else? That's just the determination of your… So it's neither step one nor step two? Right. Who is this fellow, Sergeant Belanger, or B-E-L-A-N-G-E-R? He would have been one of the investigators who looked at, investigated the sexual abuse claims. So he is a PREA coordinator slash investigator rather than a PREA administrator? I don't think he was the PREA administrator. I believe that Sergeant Belanger is somebody who does the investigations at the facility. I mean, I didn't, as we noted in our brief, all of these are questions that Judge Cleland didn't inquire about. And how long has this case been pending? Five years, the other side said? Not this case, because this is their second case, their refiled case. Remember, we won. We got their claims dismissed for failure to exhaust, and we're all done. And now John Doe's 8 and 10 have asserted that they have exhausted, and you're saying that they haven't. Right. We won the first round, but 8, 9, and 10 were dismissed for failure to exhaust. They filed this complaint in 2016, I believe. So this case has not been pending that long. It's the restated, they're back for a second. But they already lost. Why is this not, I don't get, what's the difference? If they lost, they can't refile? A new claim? That's really our position is that that's why this is not, this process should not apply retroactively to claims that arose before the effective date of the PREA process. So to claims that arose prior to PREA. So your position then is for any of the rapes and sexual assaults that occurred before whatever is decided to be the effective date. Whatever you decide is the effective date. Right. And do you have a case that supports that from a court of appeals? On PREA itself? Mm-hmm. We have this district court's interpretation, and in that case he refers to what we provided to him were several district court cases that have discussed that these standards don't apply retroactively. And then my question was, do you have a court of appeals case? No, I'm not aware of any circuit that has addressed this question yet. So looking at John Doe 9, the retaliation claim, why isn't John Doe 9's case similar to a number of cases that this circuit has decided, including Thaddeus X, the en banc case, saying that threatening to send a prisoner to a different place in retaliation for his protected activity is the essence of a retaliation claim? Why isn't this a similar situation vis-à-vis John Doe 9? Well, he's not bringing a retaliation claim. He's bringing the regular claims like anything else. It excuses the failure to exhaust. Right. He's saying, I shouldn't have had to file a PREA grievance at all because I'm scared. And what we put into the record below, and again, these are questions that Judge Cleland didn't resolve at all, because John Doe 9 was dismissed because the PREA process didn't apply to him. These are all questions that would have to go back on remand if this court disagrees that the process was not retroactive for purposes of exhausting these claims. But again, but answering your questions, we put in the record that case law from this circuit suggests you have to make an affirmative effort. You have to do something to exhaust. You can't sit in your cell and do nothing. And he had the opportunity to do something when he was transferred for a couple months into a facility he'd never been at to at least attempt to file a PREA grievance at that new facility before they filed their complaint. So this argument, so we put that in the record. We file a reply brief. We have affidavits in there. That's in the court below. We've referred to them here. And I would say at this point these are still sort of disputed questions because we didn't argue about this below. It wasn't decided below. So is there evidence in the record that if an inmate files a grievance in a new prison with respect to events that happened in a former prison that the prisoner is told they should have filed in the place where the events occurred? On ordinary grievances like the three-step process grievance, right, if you are trying to grieve, if you're in one facility and you're trying to grieve events at a different facility, your grievance needs to be sent to that facility. So why would that policy of Michigan prison system not apply to John Doe 9? In other words, if you're saying, well, John Doe 9, you should have filed in your new place. Right. He could have filed. If it's going to be sent back to the old place, Alger, why isn't that enough to show that exhaustion should not be required? You're suggesting that somehow it doesn't get investigated or it's futile? No, I'm suggesting that his fear of retaliation would be his fear of retaliation if the grievance is required to be sent to the old place would be a realistic fear that should excuse exhaustion. I guess I disagree because if he's at RMI and his grievance goes back to be investigated at AMF, at Alger or whatever, there's nobody at RMI who's going to retaliate, that would be our position. And grievances are moved around like this all the time. It's usually the facility where the bad thing allegedly occurred is responsible for investigating. And then you have to remember that there are different layers or different protocols now for the preagreements. So if he had filed a preagreements, then there are sort of layers of new protocol that apply to the investigation of those grievances. Did the Michigan prisons indicate that they were treating these grievances filed by 8 and 10 as preagreements? Yes. It says right in their response to them this is being treated as a preagreements because that's what the new policy states. So how does the Reed Bay case affect whether we should treat it as a preagreements? I guess I'm not following your... I see your time is up, so I will stop asking questions. Thank you. Thank you, Your Honor. A couple of things. First, I don't think it should be sent back for further facts. It was their affirmative defense. They filed a motion for summary disposition. It was granted. I think it was in error. Their motion for summary disposition as to their affirmative defense should be denied because they failed to meet the burden. We did argue exhaustion below. We argued all of these points. We had declarations on it. And I don't think they get another bite to go back and start arguing again a different way. This was all argued below. Am I missing something? I understood from the briefs that the argument was that the state invoked PREA before the date they now say was the effective date. That's absolutely correct. They required these 8 and 10 to respond to the new two-step process, not the old three-step. That's correct. And it was PREA, the date, that we are now talking about as when the state decided to follow the federal law. I'm not sure of that, to be honest. So they filed their grievances in March of 2016, and they filed it on the regular form. The old form. The old form. And the state then said, no, you can't process it this way. In June and August, there were long delays for John Doe 10. So I think they're saying that the end of June is when they agreed to do this. But at the time that people filed it, it was before the time they're now saying that we've got a new process. I have to tell you it's incredibly confusing because John Doe 8 got a Step 1 grievance response saying PREA grievance response Step 1. John Doe 10 never did, but he got something that said the same thing. It just didn't say what it was. Your basic point to capsule it is that this should not be applied retroactively to events that occurred before whatever one decides is the effective date. And many of these incidents that are being complained of did occur before the effective date in 2012, if we say that. And so how do you respond to that? Some did to that. I don't think it's a retroactivity issue. I mean, they may have, the lawyers may have an argument on statute of limitations. But the issue for exhaustion is all you have to do is file your grievance and have it be processed through and do affirmatively all the steps. And they did exactly that for the steps they told them they had to follow. There was nothing else they could do. Their own policy says there's no time limits. The policy doesn't say there's no time limits for assaults that occurred after a certain date. We won't process those and reject them. They could have rejected. They don't do that. So what's to prevent one of the prisoners from filing claims of assaults that occurred in 1990? Nothing, Your Honor, nothing. But I thought your answer would be the statute of limitations. Nothing to prevent them following a grievance on it and alerting them to this happened. You know, they could be telling about an officer that's still working. There's nothing to stop them filing the grievance, and Priya exactly said that. But to stop them having to go into court is the statute of limitations. Like any other agency, you know, you take the claim or they could have, you know, they can reject it for certain reasons, but there's nothing to stop people from exhausting. There's a lot to stop you from going a statute of limitations. The counsel tells us that you lost before on exhaustion, and yet we're not supposed to be talking about exhaustion today, counsel's point. What do you say? So here's what happened. They filed in 2013. A motion to dismiss for failure to exhaust was filed. They did not file anything. The court said did not excuse them based on their youthfulness or the department's failure to even advise them what to do. He dismissed it without prejudice. We clarified it's without prejudice because you can PLRA is a procedural thing. They went back and cured it. And then they filed another motion saying no, they still haven't exhausted. The decision that they hadn't I think is an error. They followed every confusing thing they could do, and we'd ask that the decision granting their affirmative defense and summary judgment be reversed for all three, and it be sent back for amerits. Thank you very much. Thank you both for your argument. The case will be submitted.